**THE DALY NO. 48.**

**THE RUSSELL NO. 2.**

**THE ROSEDALE.**

**No. A.16211.**

District Court, E. D. New York.

March 25, 1942.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libellant Daly.

Hagen & Eidenbach, of New York City (Henry C. Eidenbach, of New York City, of counsel), for libellant Sinram.

Alexander, Ash & Jones, of New York City (Joseph M. Meehan, of New York City, of counsel), for respondent.

INCH, District Judge.

In the early morning of January 29, 1941, a certain occurrence took place in the East River at the 96th Street rack. I am convinced that the evidence indicates two separate events and it is enough for the issue here to be decided that the decision be confined to the cause of the breaking away of a group of five light coal boats, which apparently for several hours had remained safely and quietly moored at this 96th Street rack.

These five boats were the Daly No. 48 on the off shore end, along side the Tracy 243, the Tracy 240, the Francis T. and the Rosedale. The Daly No. 48, the Tracy 243, the Tracy 240 were moored together and to the Francis T. as was the Rosedale. Shortly before midnight on January 28th, the Rosedale had been taken out of her position along side the Francis T and dropped under the stern of the Francis T. The Francis T. then put out a line to the boat ahead of her, the Dorothy Price. This left the space between the Dorothy Price and the Francis T. about equal to that which had been occupied by the Rosedale.

It can be seen therefore that the five boats mentioned depended upon the single line from the Francis T. to the Dorothy Price. The tide was ebb, running at about three miles an hour, weather clear, the night dark. There was a slight northwest wind blowing.

There is nothing in the testimony to indicate that these five boats, tied up in the manner described, were not sufficiently moored and were safely lying and had been so for an hour or so before the ar-

rival on the scene of the tug Russell No. 2 and her tow.

After midnight the Russell No. 2 came to the rack with two boats in tow side by side. One was the scow Suva, heavily loaded with scrap iron and on the port side of the scow was a light coal boat, McLain No. 236.

Captain Smith of the Russell No. 2 was in a hurry to hang up the light coal boat McLain 236 at the rack as he was to take the Suva elsewhere. He therefore decided to shove up the McLain No. 236 into the space formerly occupied by the Rosedale. The Russell No. 2 was short handed as to deckhands and in addition was greatly annoyed by the presence of another tug which apparently was seeking to take out a boat near the Dorothy Price. Words passed between the Russell No. 2 and this tug. The patience of the captain of the Russell No. 2 was finally exhausted and without sending any competent hand on board the Dorothy Price or the Francis T. to ascertain the safety of their moorings and in his hurry to get away and take the scow Suva to her destination, Smith backed and filled the tug Russell No. 2 and his tow, forcing and pushing the light barge McLain No. 236 into the comparatively narrow space beside the Francis T. and at somewhat of an angle, and, in this maneuver, carelessly imposed such a strain upon the line from the Francis T. to the Dorothy Price that it rendered or slipped from the cleat on the Francis T. and these five boats all went adrift in the ebb tide. The Daly No. 48 and the Rosedale suffered damage for which their owners have brought these suits.

■ The two suits were tried together under a stipulation that the testimony was available in each. Ownership and incorporation have been duly stipulated. The issue at the commencement of the trial was simply: What caused the five boats to go adrift? At the trial however the claimant of the Russell No. 2 asked leave to amend by setting up the defense that the barges did not have anchors. No attempt, however, was made to prove such a defense by the claimant on whom the burden rested. All that was done was to inquire if the boats had anchors and elicit the answer that they did not. In fact the only other testimony was to the effect that anchors would not have been useful, however, even this witness apparently did not know much of anything about the matter.

■ So the issue remaining is whether or not the Russell No. 2 was careless and thereby caused the barges to go adrift, for we are not concerned in these suits with whether or not some other tug was likewise negligent. There has been no impleading of any such vessel by claimant and while there is testimony of Captain Smith indicating that the Dorothy Price and certain other barges also went adrift due to the possible or "some unaccountable" action of a deckhand or for some other reason, I am convinced that we can safely find the cause for the separate going adrift of the five barges mentioned, two of which was the Daly and the Rosedale.

There is no indication in the evidence that Captain Smith, shorthanded, in a hurry, and annoyed by the presence of another tug exercised a degree of reasonable care in attempting to thus tie up the McLain 236 which was plainly called for in the circumstances. There was no examination of the lines or line from the Francis T. to the Dorothy Price. Cleary Bros. v. Port Reading R. Co., 2 Cir., 29 F.2d 495; Pennsylvania R. Co. v. James McWilliams Towing Line, 2 Cir., 277 F. 798; The Daly Boys, 2 Cir., 45 F.2d 605.

In fact I am of the opinion that Captain Smith did not know what barge he was trying to tie the McLain 236 to. It was dark and his testimony is in direct conflict with the answers of claimant and his bargee of the McLain 236.

That an undue strain would be put on this single line from the Francis T. to the Dorothy Price with the Francis T. already having four other light boats depending on this line, would have been at once evident if only a slight preliminary examination of the circumstances had been made. There was nothing to prevent such an examination except neglect or the hurry to dispose of the McLain 236 and get away with the Suva. So roughly was this work performed that it called for a protest from the bargee of the Francis T. The squeezing-in, or as one witness described it "we were packed in", by the McLain 236, tendered to further push the Francis T. away from the Dorothy Price and this extra weight and action carelessly imposed upon the Francis T. was sufficient cause to set her free. Down the river she went with her four other barges on the ebb tide.

In their brief counsel for claimant argued that the testimony is so conflicting that little reliance can be placed upon any of it and that not only the five barges in question but the Dorothy Price also and two others, went adrift at the same time and that the five barges in question did not go adrift from the Dorothy Price until later. The attempt is then made principally on the testimony of Captain Smith, to prove that it was all probably due to some unidentified tug.

As to the joint responsibility, if any, of any other vessel we are not here concerned. Certainly what the Russell No. 2 did was sufficient cause for the single line of the Francis T. to render and witnesses have testified that this happened.

Accordingly, libellant is entitled to a decree, with costs and the usual reference.

Submit findings of fact and conclusions of law.