## SEABOARD SAND & GRAVEL CORPORATION v. YOUGHIOGHENY & OHIO COAL CO.

## THE SEABOARD NO. 48.

### No. A–17517.

District Court, E. D. New York.

May 4, 1946.

Foley & Martin, of New York City (Christopher E. Heckman and Louis J. Lawrence, both of New York City, of counsel), for libelant.

Glenney, Mathews & Hampton, of New York City (Walter E. Mathews, of New York City, of counsel), for respondent.

BYERS, District Judge.

On March 3, 1945, the libelant's wooden deck scow Seaboard No. 48 was lying at the pier or bulkhead of the respondent Coal Company at Bridgeport, Connecticut, on the easterly side of the Peguonnoc River, where she had been made fast after the discharge of her cargo of coal during the forenoon of that day. She lay port side to the dock held by two breast lines and two dock lines of not less than 5 inches, and she was awaiting removal by the Red Star Towing Company.

At this time the captain of the No. 48 was on board, and so remained during most of the day; while he was there, three similar light scows were landed alongside in succession, the lines of each being put out from it and made fast on the adjoining vessel. They were the scows the Gravener made fast alongside the No. 48, the Murphy made fast to the Gravener, and the Kohl made fast to the Murphy.

The captain of the No. 48 then left his vessel and went to Bridgeport, and during his absence the scow Chester was made fast alongside the Kohl.

As to each of these moorings, the scow was maneuvered alongside the one already there, and a deckhand employed on a power boat operated by the respondent boarded the scow and used her lines to make that vessel fast to the one immediately alongside inshore. In no instance did that deckhand examine the lines holding the Seaboard No. 48 to the pier or bulkhead, for the purpose of ascertaining whether they were sufficiently strong to bear the burden of the mooring of the outside vessels which has been described.

At some time prior to 9:00 P.M. on March 3, 1945, presumably because of rising wind, the flotilla broke away from the bulkhead and proceeded in a southerly direction along the easterly bank of the Peguonnoc River, where the Seaboard No. 48 grounded directly under the Pleasure Beach Bridge, which crosses the river below the said pier or bulkhead.

The Seaboard No. 48 was damaged as a result of its contact with the said bridge structure, namely, the bulkhead fore and aft and the rail on the starboard side were both somewhat broken by reason of the contact just described.

Between 11:30 P.M. on the 3rd and 2:00 A.M. on the 4th, the Seaboard No. 48 was released, and returned to the bulkhead by those in the employ of the respondent.

The question for decision is whether the libelant has sustained its burden of proof by showing that the respond-

ent failed to perform its duty of inspecting the lines holding the Seaboard No. 48 to the bulkhead, before making four similar vessels fast outboard from her, in succession, and ascertaining that the added burden of those vessels could be safely borne, under expectable conditions of tide and wind.

That such a duty existed is clear from the cases; see: Pennsylvania R. Co. v. James McWilliams Towing Line, 2 Cir., 277 F. 798; The Mary Ethel, D.C., 290 F. 458; The No. 302, D.C., 19 F.2d 527; The Bartle Daly, 2 Cir., 45 F.2d 605, at page 608; The Daly No. 48, 45 F.Supp. 279, 1942 A.M.C. 581.

In the first of these, the opinion contains the following [277 F. 799]: "It was the duty of the tug master to look after the lines when additional weight was put on the moored tow. The drifting of the flotilla under the circumstances presumptively established neglect on the part of the appellant, and we think the evidence offered on behalf of the appellant does not overcome this presumption of negligence."

Here the respondent in effect offered no evidence whatever, except that customary practice was followed in this case.

Since the duty to inspect the shore lines of the Seaboard No. 48 existed, in connection with adding the outside scows, and since the last one was put in place in the absence of the scowman of the No. 48 who had gone ashore, and the duty was not performed, it follows that the libelant has made out its cause and is entitled to the usual decree, with costs.

## Findings.

1. Ownership, incorporation and operation as alleged in the pleadings have been stipulated, and are so found.

2. The libelant's wooden deck scow Seaboard No. 48, the dimensions of which are 117.3' by 36.2' by 9.1' in depth, was seaworthy in all respects when she was made fast, light, to the respondent's pier on the Peguonnoc River at Bridgeport, Connecticut, on March 3, 1945.

3. Between 10:30 A. M. and 5:30 P. M. four light scows of about the same size as the Seaboard No. 48, and in succession, were moored outside of that vessel by the respondent, whose deckhand on its power boat assisted in making each scow fast to the one next it inshore, using the lines carried on each vessel for that purpose.

4. As to each vessel, the lines were in good condition and apparently adequate for the purpose for which they were employed.

5. The Seaboard No. 48 was held to the dock or bulkhead by four lines, namely, two dock lines and two breast lines, each of which was not less than a 5 inch line.

6. Between 5:07 P. M. and 9:30 P. M., apparently due to the stress of a northwest wind, the entire flotilla was caused to break away, and all the lines holding the Seaboard No. 48 to the dock were found to have broken, and thus the flotilla was free to move down the river under a falling tide.

7. The Seaboard No. 48 grounded under the easterly end of the Pleasure Beach Bridge, and in that position she suffered damage to her bulkhead and rail on the starboard side.

8. The said deckhand in the employ of the respondent, as he made fast the four scows in succession as stated in finding 3, made no inspection of the lines holding the Seaboard No. 48 to the dock or bulkhead which has been described, to determine whether they were adequate to sustain the burden of holding five scows in safe position.

## Conclusion.

The damage caused to the Seaboard No. 48 was the result of negligence on the part of the respondent, and the libelant is entitled to the usual decree.

Settle decree.