**Petition of TRACY et al.**

**THE MARY T. TRACY.**

No. 133, Docket 22197.

United States Court of Appeals
Second Circuit.

Argued Jan. 7, 1952.

Decided Feb. 27, 1952.

Foley & Martin and Hill, Rivkins & Middleton, New York City, proctors for Red Star Towing & Transp. Co., Inc., Thomas J. Howard, Long Island Lighting Co. and Thermal Fuel Corp., appellants; Thomas H. Middleton and Christopher E. Heckman, New York City, of counsel.

Frank G. Colgan, Brooklyn, N. Y., proctor for Berwind-White Coal Mining Co., appellant.

Macklin, Speer, Hanan & McKernan, New York City, proctors for Tracy Towing Line, Inc., appellee; Leo F. Hanan, New York City, of counsel.

Before SWAN, Chief Judge, and CHASE and FRANK, Circuit Judges.

SWAN, Chief Judge.

About 10 P.M. on January 22, 1946 the tug Mary T. Tracy, operated by Tracy Towing Line, Inc., as bareboat charterer, moored the loaded coal boat she had in tow to a flotilla of six loaded barges docked at the 34th Street bulkhead in the East River, thereby overstraining the fastenings of the innermost barge, which alone had lines to the bulkhead, and causing all seven

boats to go adrift. The present litigation resulted. The district court exonerated the owners of the tug, held the tug and its charterer liable for damages to the boats which went adrift, and granted limitation of liability. The damage-claimants attack the decree in so far as it granted limitation of liability to Tracy Towing Line, Inc. The latter has filed cross-assignments of error to protect its rights on the merits.[1]

In a carefully considered opinion reported in 92 F.Supp. 706, the district court discussed the evidence in detail, and, concurrently with the opinion, filed findings of fact and conclusions of law. They need not be here repeated but some of them will be referred to in the ensuing discussion.

■ There was no error in denying the appellee exoneration from liability. Its contention that the mooring lines of the flotilla were cut, finds no support in the record. That it was negligent for the tug's master, Captain Davis, to hang his loaded coal barge onto the existing flotilla without himself making or causing the deckhand to make any adequate inspection of the lines of the only boat moored to the bulkhead is firmly established by the authorities cited in the district court's opinion. Liability of the tug and of her charterer for resulting damages is clear.

The damage-claimant appellants contend here, as they did at the trial, that the record shows (1) a general practice of negligence on the part of Captain Davis when landing a barge outside of others at a bulkhead, and (2) that Collins, the charterer's dispatcher, was aware of such practice and considered it proper; consequently they urge that limitation of liability should have been denied. For point (1) they rely on finding 28; as to point (2) they say that finding 31, which is adverse, is erroneous.[2]

■ The fact that Captain Davis was guilty of negligence in the instant case, does not prove that he was an incompetent master—much less that he was habitually negligent.[3] Neither in its findings nor in its opinion did the district court determine that the general practice of Captain Davis, when mooring a barge to others already tied up at a bulkhead, was negligent. The description of his general practice is more complete in the opinion than in finding 28, and the opinion makes plain that the judge did not consider it negligent. 92 F.Supp. at pages 710–711. We agree. We are not persuaded from reading the record that what Captain Davis said he usually did constitutes proof of repeated acts of negligence amounting to a general practice. This is enough to dispose of the appeal but we may add also that the record does not convince us that finding 31 is clearly erroneous.

Decree affirmed.

1. See City of New York v. McLain Lines, Inc., 2 Cir., 147 F.2d 393, 396.

2. Findings 28, 29 and 31 read as follows:
"28. It was the general practice of Davis, who was acting captain of the 'Mary T. Tracy' to remain in the pilot house, when landing one barge outside of others at a bulkhead, and to make such examination of the moorings of the inshore boats as could be made from the tug's pilot house, if he saw a line about which he was doubtful, he would send a deckhand to examine that line. He usually relied on the deckhand's judgment. If he was not satisfied with the deckhand's report, he would examine the line himself.
"29. The 'Mary T. Tracy' was owned by the individual petitioners and was under bareboat charter to the corporate petitioner, Tracy Towing Line, Inc., which manned, victualled and supplied it. Patrick Collins, in the employ of the corporate petitioner, was in charge of tugboat personnel, and hired and discharged them. Occasionally he rode the tugs, but spent the greater part of his time in the office performing his duties as dispatcher. Another shore employee of the corporate petitioner, Mr. Lucas, made regular trips on the tugs. He was the port engineer and held a license as an engineer. Collins did not have any licenses."
"31. None of the officers or managers of the corporate petitioner, the charterer of the tug 'Mary T. Tracy' had any knowledge of any negligent practices on the part of any of the officers or crew of the 'Mary T. Tracy.'"

3. See The George W. Pratt, 2 Cir., 76 F.2d 902, 904.