**FEDERAL BARGE LINES, INC.,**
Libellant,

v.

**STAR TOWING COMPANY, Inc.,**
Libellee.

No. 5802.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 25, 1967.

Thomas W. Thorne, Jr., New Orleans, La., for libellant.

John Poitevent, New Orleans, La., for respondent.

Alfred M. Farrell, Jr., New Orleans, La., for respondent-impleaders, Donahue Bros., Inc. and Buras Trans. Co.

CASSIBRY, District Judge.

This action was brought by Federal Barge Lines, Inc (Federal) against Star Towing Co., Inc. (Star) for damages to its Barge FBL–11 which broke away

from Star's Fleet on the afternoon of April 14, 1962 and was damaged when it drifted down upon an anchored ship. The extent of these damages is not presently at issue. Star filed petitions of impleader under the 56th Admiralty Rule against Donahue Bros., Inc. and the Tug HOMER (HOMER) and against Buras Transportation Co., Inc. and the Tug JOELLA (JOELLA). Libellant contends Star is liable for breach of its obligations to Federal as a wharfinger and bailee for hire and that the JOELLA and HOMER interests are equally liable because of their concurrent negligence. Jurisdiction as an admiralty and maritime claim was conceded by counsel for all parties and found by the Court to be present. Star contends that as a wharfinger and a bailee for hire it does not guarantee the safety of vessels moored in its fleet, but is bound only to exercise reasonable diligence to protect the vessels so moored as it would its own property. Star claims that the accident was due solely to the negligence of HOMER and JOELLA, claiming that it is customary and ordinary good seamanship for any tug mooring one barge outboard of several others to check not only the lines of the barge then being moored but also all intermediate lines, as well as the shore cables, in the particular tiers of barges being secured. Star further submits that since the crews of HOMER and JOELLA failed to check these lines, particularly after moving the various barges around several times, HOMER and JOELLA were negligent and solely at fault. Star denies that its fleetman was obligated to make any further inspections of the lines following his early morning check.

HOMER and JOELLA, on the other hand, admit to moving one or more barges several times within the fleet but point out that the lines between FBL-817 and FBL-672 which gave way or parted, were never touched or disturbed by their crews. The evidence adduced at the trial supports that view. The HOMER and the JOELLA contended and the Court finds that the alignment and location of the barges, when handled or shifted by tugs, were under the direction of Star's watchman or fleetman. That is not to say that the procedure employed by the tugs in shifting the barges was under the fleetman's direction, but rather that the positioning of the barges in the fleet was under his direction. In support of this contention, there was introduced into evidence a resolution by the Port Advisory Council, Port of New Orleans,[1] which stated in part "Methods of mooring and width of barges moored must be left to the knowledge and discretion of the fleet operator." It would appear that the thinking of port authorities, at least immediately following this casualty, was that the fleet operators' responsibilities require that they take more than a casual interest in the movement, safety and security of the barges in their care. The HOMER and JOELLA contend that Star's fleetman should have checked all the lines immediately after the tugs left the fleet and should have had a tug or watchman available for just the sort of emergency as arose in the instant case. The tugboats deny that they were legally obligated to inspect all the mooring lines in the tier of Federal barges and more specifically the lines between the FBL-817 and FBL-672 which apparently broke or gave way. The questions posed by the suit are: (1) Did Star exercise reasonable care over the barges placed in its fleet? (2) Were the JOELLA and HOMER negligent because their crews failed to check the lines between the FBL-672 and the FBL-817 prior to leaving the fleet on the day of the accident?

■ The Court concludes that Star and the HOMER and JOELLA interests were equally responsible for the damages suffered, and Libellant must therefore recover against all these respondents *in solido.*

By consent, all of the testimony of the witnesses in this case were taken by dep-

---

1. Exhibit Federal Looney #3, dated April, 1962. This Resolution was adopted subsequent to the incident giving rise to this suit and is of limited relevance.

osition. The depositions and other exhibits were admitted; the case was argued and submitted on briefs. The witnesses deposed were: Roy Looney, watchman, and Gerry Clower, vice-president of Star Towing Co., Inc.; James A. Archibald, a visitor at the fleet at the time of the breakaway; Raymond L. Thibodeaux, captain of the Tug HOMER; and Steven P. Zar, Jr., captain of the Tug JOELLA.

The basic facts surrounding the breakaway are not seriously disputed. On April 13, 1962, at 2:45 P.M., the Barge FBL–11 was placed in Star's fleet by Star's tug CALCO XV outboard of the Barge DXE–2503. The latter barge was secured to the bank by shore cables. At 3:00 A.M. on April 14, 1962, the Barges FBL–817 and FBL–672 were placed in Star's fleet by the Tug CHARLES BINTLIFF outboard of the Barge DXE–2502. The latter barge was secured to the bank by shore cables. The moorings of the Federal barges and the other barges in the fleet were checked by Star's watchman (Roy Looney) shortly after 6:00 A.M. on April 14, 1962, and all were found secure.

Around 1:00 P.M. that afternoon, the Tug HOMER arrived at the fleet to pick up the Barge DXE–2502. To reach its barge, the HOMER, on instructions from Star's watchman, made up to the Barge FBL–672 and shifted the Barges FBL–672 and FBL–817 outboard of the Barge FBL–11. The HOMER then made up to its Barge DXE–2502 which the HOMER shifted outboard of an unidentified tier of barges. The HOMER then made up to the Barge FBL–672 and pushed the Barges FBL–672 and FBL–817 back into the slot vacated by the Barge DXE–2502. Shore cables were then secured to the Barge FBL–817.

At this point, the Tug JOELLA arrived to pick up the Barge DXE–2503. To reach its barge, the JOELLA, on instructions from Star's watchman, shifted the Barge FBL–11 outboard of the Barge FBL–672. All of the Federal barges were loaded. The dead weight of the Barge FBL–11 and her cargo was approximately 1,318 tons.

The Tug HOMER then made up to the hip of the Barge DXE–2503 and by pivoting the DXE–2503 on the string of Federal barges, lifted the stern of the DXE–2503 far enough out of the river for the JOELLA to face up to her stern. Undoubtedly pressure was placed upon the tier of Federal barges during this maneuver. Once secured to her stern, the JOELLA departed the fleet with the Barge DXE–2503 at 2:15 P.M. according to the fleet records.

As the HOMER was preparing to depart with Barge DXE–2502, she observed one of the shore cables securing the tier of Federal barges let go. The shore cable that let go was the same cable that had previously been secured by the HOMER. The HOMER then pushed the three Federal barges back into position and resecured the forward shore cable.[2]

Star admitted that the only boat it had in the fleet at the time of the breakaway was a tugboat which had been without power for more than a year and that it was physically impossible for its watchman to inspect the lines on the barges in the fleet without a boat.

The river, at the time of this accident, was high, 1.4 feet below flood stage. At 3:15 P.M., according to the fleet records, the bow lines securing the Barge FBL–672 to the Barge FBL–817 slipped or parted, and the Barges FBL–672 and FBL–11, still secured together, broke the remaining lines and drifted away from Star's fleet into current. The Barge FBL–817 remained secured to the bank by the shore cables. The lines between FBL–672 and FBL–817, which either broke or slipped, were lost and were not available to the parties during the trial.

Star almost immediately discovered the breakaway and used every *available* means to intercept them and return them to the fleet. Before Star could retrieve

---

2. See HOMER-Thibodeaux 1 for Chart which illustrates the various moves made in the fleet on the day in question by the HOMER and JOELLA.

the barges, the Barge FBL–11 struck the anchor chain of an anchored vessel causing damage to the barge.

During the above shifting and drilling operations, the lines between the Barges FBL–672 and FBL–817 were not touched or checked by the crew of either tug or by Star's watchman. Both Star and the tugboats claimed that such inspections were the responsibility of the other. The Court finds that during the maneuvers made by the two tugs that there was work and give in the mooring lines between the FBL–672 and FBL–817. Star's fleetman asserted that it would have been physically impossible for him to have inspected the lines after the tugs left the fleet. Furthermore, he said that some tugboat operators, such as those on the HOMER and the JOELLA, did not need to be checked because they were dependable. He felt that they could be relied upon to do their work properly and not leave barges improperly moored.

■■ The Court has concluded that Star through its watchman, and HOMER and JOELLA through their crews, were all proximately negligent and must equally bear the cost of the damages sustained by the Libellant. A wharfinger and bailee for hire must see to it that barges entrusted to his care are adequately moored at all times.[3] Star failed to adequately discharge that responsibility. Considering the current and height of the river, the weight of the various barges, and the fact that the barges in the fleet had been moved about by the tugs HOMER and JOELLA over a period of several hours, and that many of these maneuvers involved obvious strains on lines and moorings, the watchman was proximately negligent when he failed to re-inspect the lines and moorings of all the barges directly affected by the maneuvers while the tugs were still there,

i. e., while the means of making such an inspection were still available. The Court does not believe that the wharfinger was required to maintain a tug available at all hours and does not hold that Star was required to maintain more than one watchman. Suffice it to say, if one watchman is physically able to keep a constant check on the mooring lines in the fleet regardless of the number of barges and vessels present, then one watchman would be sufficient. If that one watchman is unable to physically make an inspection of the fleet following movements of barges, then perhaps the wharfinger should have a tug available or some other vessel capable of transporting a watchman around the fleet to inspect mooring lines and/or to retrieve loose barges.

■ When the crews of the Tugboats HOMER and JOELLA failed to inspect the lines between the Barges FBL–817 and FBL–672, under the circumstances of this case they were equally negligent. There may be a difference in the degree of negligence between HOMER and JOELLA but the difference is so small as to be inconsequential. Simply because they moved only a few of the barges in the fleet, and that the lines which parted were not moved or touched, does not relieve the tugboat owners or the tugboat crews from seeing to it that all the lines on the barges which might have been directly affected by those movements were secured before they left the fleet.[4] The tugboat crews were also aware of the wear and give on mooring lines when barges are moved about. On this particular day they were in a better position than Star to make the barges secure after the maneuvers.

■ Under the facts of this case no implied warranty existed, therefore

---

3. John I. Hay Company v. T. B. Allen B. Wood, D.C., 121 F.Supp. 704, Aff'd Martin Oil Service v. John I. Hay Co., 219 F.2d 237 (C.A. 5, 1955); Burns Bros. v. Long Island R. Co. (2nd Cir., 1949) 176 F.2d 406.

4. Seaboard Sand & Gravel Corp. v. Youghiogheny and Ohio Coal Co., D.C., 65 F. Supp. 489; Petition of Tracy, D.C., 92 F.Supp. 706, Aff'd 194 F.2d 362; John I. Hay Co. v. T. B. Allen B. Wood, D.C., 121 F.Supp. 704; Aff'd 5 Cir., 219 F.2d 237.

Star's claim over in indemnity against HOMER and JOELLA is denied.

 I further find that JOELLA was not prejudiced by any delay in Libellant's institution of suit against it, and therefore JOELLA's plea of laches is rejected.

Accordingly, there will be an interlocutory judgment in favor of the Libellant, Federal Barge Lines, Inc. and against Respondents Star Towing Co., Inc., Buras Transportation Co. Inc. and its tug JOELLA, and Donahue Bros., Inc., and its tug HOMER, jointly and in solido.