The **DOW CHEMICAL COMPANY**

v.

The **BARGE UM-23B**, its tackle, apparel, etc., and the **BARGE BC-598**, its tackle, apparel, etc., in rem, and Bartlett & Company, Missouri River Barge Lines, Inc., Cargo Carriers, Inc., and Upper Mississippi Towing Corporation, in personam.

No. 805.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Aug. 2, 1968.

Neal D. Hobson, Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., for libelant.

J. Barbee Winston, James H. Roussel, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for respondents, Bartlett & Co. and Missouri River Barge Lines, Inc.

Rufus C. Harris, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for respondent, Dorr Towing Co., Inc.

J. Y. Gilmore, Jr., Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for respondent, Upper Mississippi Towing Corp.

Tom F. Phillips, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for respondent, Cargo Carriers, Inc.

Wallace A. Hunter, Ben W. Lightfoot, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for third-party defendants, Two Twenty-Eight Terminal Service, Inc. and Insurance Co. of North America.

WEST, Chief Judge:

This libel is brought by the Dow Chemical Company to recover for damages done to one of its mooring dolphins located in the Mississippi River at Plaquemine, Louisiana, as a result of being struck on two separate occasions by breakaway barges floating down the river. Dow sues the Barges BC–598 and UM–23B in rem, and their respective owners, Bartlett & Company, Grain, and Missouri River Barge Lines, Inc. and Upper Mississippi Towing Corporation, in personam, together with Cargo Carriers, Inc., from whose fleeting area the

barges broke loose. Also made respondents were the vessel BIG LOUIE II and her owner and/or operator, Dorr Towing Company, Inc., together with their insurer, Underwriters at Lloyd's. Since at the trial of the case no evidence was introduced to indicate any negligence on the part of either the BIG LOUIE II or Dorr, all parties agree that they, together with their insurer, Underwriters at Lloyd's, should be dismissed from the suit and judgment was signed and entered accordingly. By amending libel, Two-Twenty-Eight Terminal Services, Inc. and its tug, SKIPJACK, and their insurer, Insurance Company of North America, were also made respondents.

Bartlett & Company, Grain, and Missouri River Barge Lines, Inc. denies liability, and alternatively seeks judgment over against Cargo Carriers for any amount for which they may be cast. They also seek to recover attorney fees and costs of defending this suit from Cargo Carriers.

Upper Mississippi Towing Corporation denies liability and impleads Cargo Carriers seeking recovery of attorney fees and costs for defending this suit. It also alternatively seeks judgment over against Cargo Carriers for any amount for which it might be cast.

Cargo Carriers, Inc. denies liability and files a third party complaint against Two Twenty-Eight Terminal Services, Inc. and its tug, SKIPJACK, seeking judgment over in the event it is held liable to Dow Chemical Company.

Two Twenty-Eight Terminal Services, Inc. denies all liability.

After due consideration of the evidence adduced at the trial of this case, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. At approximately 10:00 or 10:30 p. m. on the night of March 27, 1964, some twelve dumb barges, including the Barge BC–598, broke loose from their moorings at the fleeting area of Cargo Carriers, Inc. in the Port of Baton Rouge.

2. At the time of the breakaway, respondent, Cargo Carriers, Inc., was the bailee for hire of the Barge BC–598, which was owned and/or operated by respondents, Bartlett & Company, Grain, and Missouri River Barge Lines, Inc.

3. In order to retrieve the breakaway barges, the Tug MARION M, under charter to respondent, Cargo Carriers, Inc., contacted the Tug SKIPJACK, owned and operated by respondent, Two Twenty-Eight Terminal Services, Inc., and employed its services in this endeavor. Two Twenty-Eight Terminal charged Cargo Carriers $20 per hour for these services.

4. The SKIPJACK captured seven of the breakaway barges, including the Barge BC–598, and tied them off at various points along the river bank.

5. The BC–598 and a barge known as the GB–1 were captured by the SKIPJACK at about 1:05 a. m. on the morning of March 28, 1964, and were pushed ashore. One of the barges was then tied to a tree with the other being shackled to it.

6. The Captain of the SKIPJACK reported the location of the BC–598 and the GB–1 to the MARION M, who then instructed the SKIPJACK to leave those barges and assist in bringing other captured barges upstream to Cargo Carriers' fleeting area.

7. Some time after the SKIPJACK left, the Barge BC–598 broke loose from its mooring on the river bank and floated downstream about four miles and struck a mooring dolphin owned by plaintiff, Dow Chemical Company. This collision, which occurred some time after 7:00 a. m. on March 28, 1964, caused certain damage to the dolphin, for which Dow Chemical seeks recovery in this suit.

8. As a result of this collision of March 28, 1964, the dolphin of Dow Chemical Company was damaged in the amount of $22,300.

9. Despite the claim of Cargo Carriers that high water resulting from an Alaskan earthquake caused the BC–598 to break loose from its mooring at Cargo Carriers, this Court finds as a matter of fact that the initial breakaway from Cargo Carriers' fleeting area was not caused by an Alaskan earthquake. As a matter of fact, five other barges broke loose from the same Cargo Carrier fleeting area on the afternoon of March 27, 1964, which was admittedly long before the high water allegedly occurred at about 10:00 p. m. as a result of the Alaskan earthquake. And furthermore, the initial breakaway of the Barge BC–598 from Cargo Carriers' fleeting area on the night of March 27, 1964 was not the proximate cause of the damage to libelant's dolphin. Following the initial breakaway the barge was successfully recovered by the SKIPJACK, and it was long after the effects, if any, of the alleged earthquake had vanished that the BC–598 again broke loose and caused the damage complained of. The two barges, the BC–598 and the GB–1, were, according to the testimony of the Captain of the SKIPJACK, tied to a willow tree on the bank of the river with a single line from the tree to one end of one barge, with the second barge being shackled to the first in such a fashion that in his opinion, water disturbance, such as that caused by a passing ship, would "definitely" have caused the barge to break loose.

10. At no time did the SKIPJACK ever advise the MARION M or Cargo Carriers that the Barge BC–598 was so inadequately moored.

11. The breakaway of the BC–598 from its mooring on the river bank, after it had been captured and thus tied to a tree by the SKIPJACK, was the result of the negligence of the crew of the SKIPJACK in failing to properly secure the barge to the shore, and this negligence was the sole and proximate cause of the collision with and resulting damage to the libelant's dolphin.

12. On December 30, 1964, at about 3:00 a. m., the Barge UM–23B owned by respondent, Upper Mississippi Towing Corporation, and of which respondent, Cargo Carriers, Inc., was, at that time, a bailee for hire, broke loose from Cargo Carriers' fleeting area. Due to the fog, Cargo Carriers was unable to retrieve it, and it floated downriver and collided with the same dolphin owned by libelant, Dow Chemical Company, that was previously damaged by the Barge BC–598.

13. This collision and resulting damage to the dolphin was proximately caused by the negligence of Cargo Carriers, Inc. in failing to so moor or tie up the Barge UM–23B that it would not, under ordinary and foreseeable circumstances, break loose.

14. The damage done to the dolphin as a result of this second collision amounted to $13,128.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter and venue is properly laid in the Eastern District of Louisiana, Baton Rouge Division.

■ 2. After the barge BC–598 broke away from Cargo Carriers' fleeting area on the night of March 27, 1964, Two Twenty-Eight Terminal Services, Inc., the owner and operator of the Tug SKIPJACK, was employed as an independent contractor by Cargo Carriers, Inc. to recapture and dock the barge. Two Twenty-Eight Terminal Services, Inc. was an independent contractor and not the agent of Cargo Carriers while its vessel, the SKIPJACK, was engaged in locating, capturing and mooring the Barge BC–598. People of State of California v. The Jules Fribourg, 140 F. Supp. 333 (N.D.Cal.–1956); Publicker Industries, Inc. v. Tugboat Neptune Co., 171 F.2d 48 (C.A.3–1948); The West Eldara, 104 F.2d 670 (C.A.2–1939); The John D. Rockefeller, 272 F. 67 (C.A. 4–1921); The Dorset, 260 F. 32 (C.A.4–1919).

3. As an independent contractor, engaged in the job of towing and mooring a dumb barge, Two Twenty-Eight Terminal was under a duty to properly and securely moor the Barge BC–598 and its failure to do so constituted an act of negligence. Hebert v. Barge ABL–22, 221 F.Supp. 725 (E.D. La.–1963); Ohio River Company v. M/V Irene Chotin, 238 F.Supp. 114 (E.D.La.–1965); United States v. Powell Bros. Barge No. 128, 249 F.Supp. 553 (S.D.Fla.–1965).

4. The Court finds, as a matter of law, that the negligence of the crew of the SKIPJACK in failing to properly moor the BC–598 after its capture while floating down the river, was the efficient intervening cause of the barge's collision with the libelant's dolphin and the damages resulting therefrom. Any negligence of Cargo Carriers with respect to the initial breakaway of the Barge BC–598 was rendered remote insofar as the damage to libelant's dolphin is concerned by the efficient intervening negligence of the crew of the SKIPJACK.

5. The Court finds, as a matter of law, that the respondent, Two Twenty-Eight Terminal Services, Inc., as the owner and operator of the Tug SKIPJACK, whose negligence was the sole proximate cause of the damage to libelant's dolphin caused by the accident of March 28, 1964, and their insurer, Insurance Company of North America, are legally liable to said libelant in the sum of $22,300. Since the Court in admiralty is vested with discretion as to the allowance of interest on judgments, Dyer v. National Steam Nav. Co., 118 U.S. 507, 518–519, 6 S.Ct. 1174, 1175, 30 L. Ed. 153, 155 (1886); National Marine Service, Inc. v. Talley, 348 F.2d 589 (C. A.5–1965), and in view of the fact that the dolphin was used more or less regularly by the libelant following the damage resulting from the collision of March 28, 1964 to the time of its replacement on August 12, 1965, this judgment shall bear interest at the rate of 5 per cent per annum from August 12, 1965, until paid.

6. The Court having found as a matter of fact that the damage to libelant's dolphin caused by the collision of the Barge UM–23B on December 30, 1964, was caused solely and entirely by the negligence of the respondent, Cargo Carriers, Inc., it now finds, as a matter of law, that the respondent, Cargo Carriers, Inc., is indebted unto the libelant, Dow Chemical Company, in the amount of $13,128, together with interest thereon at the rate of 5 per cent per annum from August 12, 1965 until paid.

7. Since the Court has found as a matter of fact that there is no liability on the part of the respondent, Cargo Carriers, for damages to libelant's dolphin caused by the Barge BC–598 on March 28, 1964, as a matter of law, Cargo Carriers' third party demand for judgment over against Two Twenty-Eight Terminal Services, Inc. will be dismissed.

8. At the specific request of libelant, as shown by its letter filed in the record, no in rem process was ever issued, and no seizure or arrest of the Barge BC–598 or the Barge UM–23B was made, and therefore this Court has no jurisdiction over either of the barges. Hence libelant is not entitled to a judgment in rem against either the Barge BC–598 or the Barge UM–23B.

9. Any prima facie case of personal negligence on the part of the barge owners and/or operators, Bartlett & Company, Grain, Missouri River Barge Lines, Inc., and/or Upper Mississippi Towing Corporation, that might have resulted from the collision of their respective barges with the libelant's dolphin has been successfully rebutted by a showing that the damage to the dolphin was, in fact, caused solely and entirely by the negligence of Two Twenty-Eight Terminal Services, Inc. insofar as the first collision is concerned, and by the negligence of Cargo Carriers, Inc. inso-

far as the second collision is concerned, and hence all claims and cross-claims against the said Bartlett & Company, Grain, Missouri River Barge Lines, Inc., and Upper Mississippi Towing Corporation must be dismissed. Burns Bros. v. Long Island R. Co., 176 F.2d 406 (C.A. 2–1949).

■ 10. When Bartlett & Company, Grain, and/or Missouri River Barge Lines, Inc., and Upper Mississippi Towing Corporation placed their respective barges in Cargo Carriers' fleeting area, Cargo Carriers became the bailee of the vessels entrusted to its custody. Federal Barge Lines v. Star Towing Co., 263 F. Supp. 981 (E.D.La.–1967); Transit Casualty Co. v. United States, 239 F.Supp. 436 (S.D.Tex.–1965), and it was, as a matter of law, responsible for caring for those vessels after they were committed to its custody. John I. Hay Co. v. The Allen B. Wood, 121 F.Supp. 704 (E.D. La.–1954).

■ Since it has been found, as a matter of fact, that both the Barge BC–598 and the Barge UM–23B broke loose from their moorings at Cargo Carriers' fleeting area as a proximate result of the negligence of Cargo Carriers, the owners and/or operators of said barges, Bartlett & Company, Grain, and Missouri River Barge Lines, Inc., and Upper Mississippi Towing Corporation are entitled to recover from Cargo Carriers, Inc. all reasonable attorney fees and costs necessarily expended by them in defending this suit. Bielawski v. American Export Lines, 220 F.Supp. 265 (E.D.Va.–1963); American Export Lines v. Norfolk Shipbuilding and Dry. Corp., 336 F.2d 525 (C.A.4–1964); Singer v. Dorr, 272 F.Supp. 931 (E.D. La.–1967).

In the event counsel for the respective parties are unable to agree on what constitutes reasonable attorney fees and costs to which said respondents are entitled, either party may request that that issue be presented to the Court for determination. Judgment will be entered accordingly.