**GREENVILLE SHIPBUILDING CORP.
et al., Plaintiffs,**

v.

**The HARTFORD ACCIDENT & INDEM-
NITY COMPANY, Defendant.**

**No. GC 7121.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Nov. 19, 1971.

J. Robert Nunnery, Jr., of Robertshaw, Merideth & Swank, Greenville, Miss., for plaintiffs.

James L. Robertson, of Campbell, De-Long, Keady, Robertson & Hagwood, Greenville, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The incident which gives rise to this litigation occurred on Lake Ferguson, a navigable waterway near Greenville, Mississippi on the Mississippi River, on the afternoon of January 20, 1970, when tankerman Ivey Harold Duke, a member of the crew of the M/V J. E. VICKERS, stepped down from the deck of the Barge JOHNNA B onto a scaffold placed on the deck of the steel hull paint barge #25, positioned alongside the Barge JOHNNA B, and losing his footing, plunged into the water between the two barges and drowned.

The incident occurred at the shipyard of plaintiff, Greenville Shipbuilding Corporation (Greenville), where said plaintiff has a floating drydock and other facilities, utilized by it in designing, constructing and repairing steel vessels, barges, towboats and marine vessels. At this point on the banks of Lake Ferguson, plaintiff has a drydock, quarter boat, ramp and work barge and a steel hull paint barge (paint barge), floating upon the lake's waters and permanently affixed to the bank of the lake. The quarter boat and paint barge are storage barges. At the time of the incident above mentioned the Barge JOHNNA B (Johnna B) was tied up on the inside of the paint barge between that barge and the bank of the lake. The Johnna B's stern corner was pulled up tight with a wire to the paint barge. Approximately thirty feet from the stern corner of the Johnna B alongside the paint barge there was a small opening between the barges. The deck of the Johnna B was about six feet above the deck of the paint barge. On the deck of the paint barge Greenville provided a wooden scaffold approximately three feet in height. This scaffold was positioned on the paint barge near the Johnna B and provided a means by which persons working on the Johnna B could ascend to its deck, and return therefrom.

Plaintiff J. E. Vickers (Vickers), operates the shipyard and ship-repair facility above mentioned (facility), through Greenville, a corporate entity either owned or controlled by him. Plaintiff Barge Bobbie, Inc., owns the Johnna B. Vickers either owns or controls Barge Bobbie, Inc. The M/V J. E. VICKERS is owned by Vickers. At the time of the incident aforesaid plaintiff Vickers Towing Co., Inc. (Vickers Towing), was the charterer and operator of the M/V J. E. VICKERS and its tow, which included the Johnna B. Vickers also controls Vickers Towing.

On the occasion in question the M/V J. E. VICKERS and its tow were docked at the facility and employees of Vickers were engaged in gas freeing the Johnna B. Duke was one of the workmen engaged in this undertaking.

At about 4:50 p. m. on the date aforesaid, Duke attempted to leave the Johnna B, and in doing so made use of the scaffold. The weather was severe at the time and ice had accumulated on the floor of the scaffold. While stepping down from the deck of the Johnna B onto the floor of the scaffold, Duke slipped on the ice, lost his footing and plunged into the waters of the lake under the two barges. His body was recovered from the lake, after the Johnna B was moved from its mooring.

Vickers held, at the time, a policy of comprehensive general liability insurance with defendant Hartford Accident and Indemnity Company (Hartford) which provided bodily injury liability coverage with limits of liability of $100,000 for each person and $300,000 for each occurrence. The policy had been issued to Greenville and covered the premises occupied by Greenville in the operation of its aforesaid shipyard and ship-repair facility. A policy provision excluded bodily injury arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, if such injury occurred away from the premises owned by, rented to or controlled by Greenville.[1]

---

1. The provisions of the policy pertinent to this action are:

"I. COVERAGE A—BODILY INJURY LIABILITY

.   .   .   .   .

The company will pay on behalf of the insured all sums which the *insured* shall become legally obligated to pay as *damages* because of

  Coverage A—*bodily injury* or
  Coverage B—*property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or

Vickers also held, in addition to the Hartford policy, two Protection and Indemnity (P & I) insurance policies issued by Northwestern National Insurance Company through its general agents S. Kausler, Limited (Kausler),[2] New Orleans, La. One of the policies issued by Northwestern provided, inter alia, that Northwestern would pay Greenville such sum within the limits fixed by the policy as Greenville, as the owner of the vessel described as "Steel Tank Barge 'No. 25'", became legally liable to pay for the loss of life of, or injury to, or illness of, any person. This policy contains the following:

> Upon making payment under this policy this Company shall be vested with all of the assured's rights of recovery against any person, corporation, vessel or interest and the assured shall execute and deliver such instruments and papers as this Company shall require and do whatever else is necessary to secure such rights.

> . . . . . .

> Where the assured is, irrespective of this policy, covered or protected against any loss or claim which would otherwise have been paid by this Company, under this policy, there shall be no contribution or participation by this Company on the basis of excess, contributing, deficiency, concurrent, or double insurance or otherwise."

judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
Exclusions

This insurance does not apply:

. . . . . .

(d) to *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, if the *bodily injury* or *property damage* occurs away from premises owned by, rented to or controlled by the named *insured;* . . "
"4. Insured's Duties in the Event of Occurrence, Claim or Suit.

. . . . . .

(c) . . . The *insured* shall not, except at his own cost, voluntarily make any

The other policy issued by Northwestern provided, inter alia, that Northwestern would pay Vickers Towing Company, Inc., the name insured in the policy, subject to the limits of the policy, such sum of money as Vickers Towing Company, Inc., as the owner of the M/V J. E. VICKERS, and the Barge JOHNNA B, became legally liable to pay on account of the loss of life of, or injury to, or illness of, any person.

On the day of the accident Duke and John C. Byrd, the latter being employed as port captain for Vickers Towing, with others, were engaged in cleaning and gas freeing the Johnna B, which, as has been indicated, was a part of the tow of the M/V J. E. VICKERS, to which Duke was assigned as a tankerman. A scaffold owned by Greenville was positioned on the paint barge, alongside the Johnna B and was being used by those working on the Johnna B as a means of going upon and departing from the Johnna B. The scaffold was not defective in its construction. However, on account of prevailing weather conditions, a coat of ice had been allowed to accumulate on the platform. Duke, Byrd, and the others who worked on the barge, knew of this condition, and tried to exercise extreme care when using the scaffold. Duke and Byrd, needing additional equipment for the cleaning work being performed by them, started to leave the Johnna B by

payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.
5. Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured*, the claimant and the company."

2. When in this memorandum reference is made to "Kausler", the reference shall be deemed to include when applicable Northwestern National Insurance Company (Northwestern).

way of the scaffold to secure the equipment. Duke left the Johnna B first and the accident occurred.

The file does not indicate whether Greenville was engaged in any work relative to the cleaning of the Johnna B. The facility and the waters of the lake adjacent to the facility seemed to have been used indiscriminately by Greenville, and the other Vickers corporations. Neither does the record reflect the connection, if any, of Greenville with the use of the scaffold, except that Greenville owned the scaffold, and that the scaffold was on the paint barge, which barge was a part of the flotilla making up the shipyard facility owned by Greenville.

Immediately after the tragic death of Duke, Hartford and Kausler were notified of the incident and both promptly made an investigation thereof. The investigations of both carriers were full and complete in every respect, the attorney employed by Kausler and the adjuster for Hartford cooperating with each other to develop the full facts surrounding the incident.

In the course of the investigation Vickers Towing, the employer of Duke, received a letter from the attorneys representing Duke's beneficiaries making a demand for the payment of monetary damages resulting from Duke's death. The attorney representing the Kausler interest and Hartford's representative decided that it would be best that the demand be handled by Vickers Towing's carrier, Kausler, through its attorney, without making known to the attorneys for Duke's beneficiaries, Hartford's connection with the incident. Accordingly, this was done. On May 20, 1970 the attorneys for the Duke interest made a firm offer to settle the claim for the sum of $15,000. This offer was very attractive to Kausler's attorney, and upon his recommendation Kausler determined that the offer should be accepted. Kausler's attorney contacted Hartford's representative in Greenville and proposed that Kausler and Hartford share equally in the settlement. Hartford's local representative relayed the proposal to Hartford's Memphis office, with his recommendation that the proposal be accepted. However, the Memphis office decided to reject the proposal on the ground that the accident did not occur on the premises insured by Hartford. The next day, May 21, 1970, Hartford's Oxford, Mississippi office wrote Greenville a letter in which Greenville was advised of Hartford's receipt of Greenville's loss report, and that Hartford had been and was conducting an investigation of the claim which investigation would continue. However, Hartford included a provision in the letter giving Greenville notice that Hartford's investigation did not constitute an admission of coverage and/or liability, but was being conducted with full reservation of all rights afforded Hartford under Greenville's policy of insurance.

Kausler proceeded with the settlement making payment to the claimants in the sum of $5,000 under the Greenville P & I Policy and $10,000 under the Vickers Towing P & I Policy. Hartford refused to participate in the settlement, taking the position that the "Watercraft" exclusion of the policy relieved it of liability in the premises. This action followed.

Plaintiffs are Greenville, Vickers Towing, Barge Bobbie, Inc. and Vickers. They sue Hartford to recover the settlement money and expense, including attorney's fees, incurred in the handling of the claim for damages on the part of Duke's survivors. Their claim is bottomed on the proposition that Hartford insured Greenville against the claim arising from Duke's death; that such insurance constituted the primary insurance available for the payment of the claim; that Hartford's refusal to acknowledge coverage and make a contribution to the settlement money was without substantial support from the uncontroverted facts regarding the death of Duke; and that Hartford's actions in that regard were capricious and arbitrary. In the alternative plaintiffs seek contribution from Hartford to the amount of the settlement.

Hartford defends the action and seeks exoneration from liability on the ground that Greenville breached the insurance agreement. The policy contains a provision that Greenville will not voluntarily make any payment, assume any obligation or incur any expense except first aid to others, without the prior consent of Hartford. Since the settlement was made without its consent, Hartford claims that Greenville breached the contract for which reason Hartford is released from any liability thereunder.

The policy also contains a provision that no action shall be brought thereon until the amount of the insured's (Greenville) obligation to pay shall be finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and Hartford. Duke's beneficiaries did not bring a suit against Greenville, and Hartford did not agree to the payment of any sum of money to them in settlement of the claim. Thus, Hartford contends Greenville cannot sustain this action.

Plaintiffs admit that a suit was not instituted by Duke's beneficiaries and that Hartford did not agree to the settlement, but, plaintiffs contend that Hartford did not have reasonable grounds upon which to deny coverage, and that under the circumstances surrounding the death of Duke the settlement figure was so attractive, that prudence demanded an acceptance of the offer of settlement.

In addition to plaintiffs' claim that Hartford breached the policy provisions by refusing to accept coverage and contribute to the settlement figure, plaintiffs also contend that they are subrogated to Kausler's right of indemnification against Hartford, based upon plaintiffs' claim that Hartford was primarily liable on the claim, and, Kausler, having paid Hartford's debt, is entitled to indemnity from Hartford.

All parties have moved for a summary judgment contending that the facts involved in the suit are not in dispute and that each moving party is entitled to a judgment as a matter of law.

## THE RIGHT OF GREENVILLE TO RECOVER AGAINST HARTFORD ON THE POLICY OF INSURANCE ISSUED BY HARTFORD

It is apparent that Greenville cannot recover from Hartford any portion of the settlement money unless Hartford is found to have waived the provisions of the policy to which reference has been above made.

Greenville contends that the uncontradicted facts reflected by the record conclusively show that Duke's death occurred on the insured premises of Greenville and that Greenville's responsibility for the claim arising from Duke's death is not excluded from the coverage of the policy by the policy provision to the effect that the insurance afforded by the policy "does not apply . . . to bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, *if the bodily injury . . . occurs away from premises owned by, rented to or contracted by the named insured (Greenville)*". (Emphasis supplied.)

Plaintiffs assert that assuming for the sake of argument that the Paint Barge #25 is a "watercraft" within the meaning of the policy provision, the bodily injury (the death of Duke) occurred on the insured premises, and, therefore, the exclusion does not apply.

Hartford states in its rebuttal brief that it accepts as correct, for the purpose of the summary proceedings, "that the sole proximate cause of the death of Ivy Harold Duke was the negligence of Greenville Shipbuilding Corp.", a proposition urged upon the court by plaintiffs. In the court's determination of issues submitted for its decision on the motions for summary judgments the court accepts this fact as being uncontroverted.

The question then presented is whether Hartford's refusal to contribute to the settlement justified the other insurer in moving forward and settling the claim.

In determining the reasonableness of Hartford's refusal to accept coverage and contribute to the settlement, numerous admitted facts must be considered by the court. First, Hartford did not, at any time, refuse to defend an action instituted against Greenville. Hartford was not tendered the defense of any suit. Second, Hartford promptly investigated every phase of the accident and made known its intention to continue the investigation, if such appeared reasonably necessary. Third, it was not until Kausler made demand upon Hartford for a contribution to the amount of the settlement, that Hartford finally took the position that the claim did not come within its coverage because the death of Duke did not occur on the premises insured under the policy. The only written notice given Greenville by Hartford with reference to coverage is contained in Hartford's letter to Greenville, dated May 21, 1970, in which Hartford placed Greenville on notice that its investigation of the claim should not be taken as an admission of coverage and/or liability, and the investigation was being conducted by Hartford with full reservation of rights afforded Hartford under its policy. Fourth, Hartford's policy limit for the death involved was $100,-000. Thus, in the event of Hartford's liability, Greenville was afforded ample protection under the facts shown to exist in this action. Hartford was gambling a possible exposure of $100,000 on its judgment that the death of Duke did not occur on the premises insured under the policy.

The court need not review the authorities which hold that an insurer cannot breach its contract by unjustifiably refusing to defend an action against its insured, upon the ground that the claim upon which the action is based is outside the coverage of the policy, and at the same time take advantage of a policy provision prohibiting the insured from settling any claim except at its own cost without consent of the insurer. See cases cited in the annotation appearing in 49 A.L.R.2d beginning on page 744 entitled "Loss of right to revoke clause prohibiting settlement by insured". This well known and generally accepted principle of law is recognized and has been adopted by the Mississippi Supreme Court.[3] The court recognizes that the action sub judice is *Erie* bound and that this court must apply Mississippi law in reaching a decision in this case.[4]

Plaintiffs advance and urge upon the court the rule recognized in some jurisdictions that an insurer who denies liability on the grounds that the claim is not covered by the policy is liable for the insured's settlement before suit when the claim is found to have been within the policy coverage. See annotation at pages 1086–1089, 67 A.L.R.2d. As the court has mentioned the action sub judice is controlled by Mississippi law, and if the Supreme Court of Mississippi has spoken on the point at issue, this court is bound by that decision.

Defendant cites the case of United States Fidelity and Guaranty Co. v. Cook, 186 Miss. 840, 192 So. 24 (1939)[5] as controlling on the question here presented. The decision in *Cook* (1939) develops the following facts. Cook had a contract with the State Highway Commission for the maintenance of a highway, and sublet his work to a subcontractor. In the performance of this work

---

3. Mississippi cases which hold that an insured may recover from the insurer money paid out for the settlement of a claim and/or expense incurred in connection therewith, where the insurer wrongfully denies coverage and refuses to defend an action brought against the insured are: Mavar Shrimp & Oyster Co. v. United States Fidelity & Guaranty Co., 187 So.2d 871 (Miss.1966) (settlement and expense recovered); Travelers Ins.

Co. v. General Refrigeration and Appliance Co., 218 So.2d 724 (Miss.1969) (attorneys fees and expense for successful defense recovered).
See also Boutwell v. Employers' Liability Assurance Corp., 175 F.2d 597 (5th Cir. 1949), a Mississippi case.

4. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. Hereinafter referred to as *Cook* (1939).

a number of trucks were used, and one of the trucks so used caused an injury to several workmen. Some of the workmen sued Cook, and one of them, Eddie Wright, secured a judgment in the trial court, but on appeal the case was reversed and judgment rendered, holding Cook was not liable for the injury.[6] Prior to the filing of these suits the insurer disclaimed liability for the injury inflicted upon the workmen, claiming that it was not responsible under its policy and was not called upon to defend the suit and declined to do so. Subsequent to the decision in Cook v. Wright, *supra*, Cook filed suit against the insurer on the liability insurance policy for reimbursement for attorneys fees paid and costs incurred in defending a suit filed by another of the injured workmen. The Mississippi Supreme Court held on appeal in United States Fidelity and Guaranty Co. v. Cook, 181 Miss. 619, 179 So. 551 (1938) [7] that the insurer was liable for the attorney's fees incurred in defending the suit. The holding was bottomed on a provision in the policy of insurance which obligated the insurer to defend the suit, even if the suit be groundless, false or fraudulent.

While the litigation with reference to Cook (1938) and Cook v. Wright, supra, was pending, Cook, without the permission or consent of the insurer made a settlement with two of the workmen for $150.00 each, and incurred an attorney's fee of $50.00 in perfecting the settlements. These workmen had not filed suit. When the insurer refused to reimburse Cook he filed suit to recover the amount of the settlements and the attorney fee. The Mississippi court, in holding that the insurer was not liable in Cook (1939), said:

"In the present case no suit was brought, and consequently the obligation of the appellant to defend was not incurred under the policy. It is immaterial that the claim was settled in the present case before suit was instituted for a less sum than it might have cost to defend the suit, had suit been brought. There was no liability under the terms of the policy for the settling of the claim which had not been sued on, or attorney's fees in negotiating such settlement. It does not come within the terms of the policy and the obligations of the parties are fixed by the contract." [8]

The action sub judice can be distinguished from Cook (1939) in at least two features. The claim against the insured in Cook (1939) was not within the coverage of the policy. Here, the policy protects Greenville against the claim arising out of the death of Duke. In Cook (1939) the insurer, in addition to notifying the insured that it had no responsibility under the policy for the claims of the workmen, also declined to provide a defense. Here, Hartford promptly began an investigation of the claim and has proceeded under a nonwaiver of rights notice. Hartford was not tendered, nor has it been declined, to defend the claim.

The Cook (1939) case, while not on all-fours with the case sub judice, is persuasive. The Cook court emphatically stated that the claim for reimbursement of the amount of the settlement and expenses incurred in perfecting the settlement did "not come within the terms of the policy and *the obligations of the parties are fixed by the contract*." (Emphasis supplied.)[9] Other Mississippi cases lead the court to the conclusion that the Mississippi Supreme Court places great emphasis on contract provisions in cases involving insurance policies where, as here, the provisions are plain and unambiguous. This thread of reliance upon contract provisions runs through the Mississippi cases cited to the court by counsel. In *Navar Shrimp, supra*, the court found the policy provision ambiguous and, therefore, subject

---

6. See Cook v. Wright, 177 Miss. 644, 171 So. 686 (1937).

7. Hereinafter referred to as Cook (1938).

8. 192 So. at 24, 25.

9. 192 So. at 25.

to a construction most strongly against the insurer and most favorable to the insured.[10] To the same effect is Travelers Ins. Co. v. General Refrigeration & Appliance Co., *supra*.[11] Where the language is plain and unambiguous, however, the Mississippi Supreme Court has enforced the contract as written, holding, in such instances that construction by the court is not necessary. See Griffin v. Maryland Cas. Co., 213 Miss. 624, 57 So.2d 486, 489 (Miss.1952); Mississippi Mutual Life Insurance Co. v. Ingram & Laud, 34 Miss. 215; Continental Casualty Co. v. Hall, 118 Miss. 871, 80 So. 335, 336 (1919); Employers Mutual Casualty Company v. Nosser, 250 Miss. 542, 164 So.2d 426, 431, 168 So.2d 119 (1964).

The provisions of the policy upon which defendant relies are expressed in plain and certain language. The policy provides in simple and understandable language that no action shall lie against defendant on the policy unless as a condition precedent thereto, there shall have been a full compliance with all of the terms of the policy, nor until the amount of Greenville's obligation to pay shall have been finally determined either by judgment against Greenville after actual trial or by written agreement of Greenville, the claimants and the defendant. There is also a similar plain and understandable provision in the policy that Greenville shall not, except at its own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident.

The court does not understand plaintiffs to contend that the pertinent policy provisions are not plain, certain, unambiguous, and understandable. Instead, plaintiffs contend that defendant has waived its right to enforce the policy provisions.

The Mississippi Supreme Court had held "The right to contract is a sacred right, and a contract, entered into in good faith, free from fraud, and not in violation of law by the parties, like a man's word, should be respected and enforced". Employers Mutual Casualty Company v. Nosser, *supra*, 164 So.2d 438.

In determining the weight to be given to *Cook* (1939) it is well to consider the factual situation as reflected by the three *Cook* cases. The insurer, United States Fidelity and Guaranty Co., disclaimed liability, contending that the injured workmen were not the employees of its insured but of a subcontractor. It was not until the Supreme Court decided Cook v. Wright, *supra*, on January 4, 1937, that the insurer's judgment in that regard was determined to be correct.

While Cook v. Wright was pending in the Supreme Court, Cook compromised with one of the parties injured at the same time and in the same collision in which Wright was injured, the compromise being for a nominal amount. Cook sued his insurer in *Cook* (1939) to recover $350.00 expended by him for settlement with two of the injured workmen, without suit being filed by the workmen. The *Cook* cases reflect, however, that the settlements with the two injured workmen involved in the *Cook* (1939) case were made prior to the decision in Cook v. Wright. Thus, when these settlements were made, it had not been judicially determined that Cook was not liable to the injured workmen and that the claims were not covered under Cook's insurance policy.

Defendant contends that in *Cook* (1939) the Mississippi Supreme Court adopted the rule, without exception, that before an insurer can be held to have waived contract provisions prohibiting settlement without insurer's consent, it must appear that suit has been filed against the insured, and the insurer has refused to defend the suit. In other words, the insurer's refusal to assume coverage, may have been unreasonable, capricious, arbitrary, or without substantial support in the facts, yet, the

---

10. 187 So.2d at 874.

11. 218 So.2d at 726.

insurer can invoke the benefits of the rule.

Plaintiffs cite the annotation appearing in 67 A.L.R.2d page 1086, et seq. The cases cited there support the rule that where the insurer's conduct in denying liability is arbitrary, capricious, or without substantial support in the facts of the case, policy provisions such as the provisions involved in the action sub judice are waived and the insurer can be held liable for reasonable settlements made before the filing of suit. The court is persuaded that the Mississippi Supreme Court would adopt this rule should the court have occasion to do so. This court is not persuaded, however, that the circumstances of the case sub judice brings defendant within such a rule.

In this case Hartford undertook to investigate the accident. The investigation was thorough and complete and was continuing when the settlement was effected by the other insurer. Kausler had two policies, one covering Greenville's "Paint Barge #25" which is involved herein. This policy afforded Greenville coverage in excess of any coverage Greenville otherwise had on the barge. If Hartford's policy covered the incident, Kausler's policy came into effect only after Hartford's limit of $100,000 had been exhausted. Kausler's attorneys believed the proffered settlement to be extremely reasonable, considering the gravity of the claim, and assert that a trial of the action could have resulted in a judgment as high as $50,000. This figure, however, is well within Hartford's limits. Kausler's other policy protected Vickers Towing, Vickers and Barge Bobbie, Inc., the owner of the Johnna B, against the claim arising from Duke's death. Duke was a tankerman attached to the crew of the M/V J. E. VICKERS. This vessel, owned by Vickers, at the time of the accident was chartered to Vickers Towing. The Johnna B was also chartered to Vickers Towing and was a part of the tow of the M/V J. E. VICKERS. Thus, claims growing out of the Duke tragedy were within the coverage of Kausler's policies. At the time of the accident Duke was performing gas freeing work on the Johnna B, which was then afloat in the navigable waters of Lake Ferguson, but tied to Greenville's paint barge which was in turn a part of the flotilla making up Greenville's drydock and shipyard. The United States Court of Appeals for the Fifth Circuit has determined that Greenville's drydock is not a vessel owing a warranty of seaworthiness. Russell v. Greenville Shipbuilding Corp., 428 F.2d 1168 (5th Cir. 1970). The Johnna B was not, however, permanently affixed to the flotilla making up the Greenville facility. It was afloat in the lake and a part of the tow of the vessel to which tankerman Duke was assigned. His status was therefore that of a seaman. The Johnna B owed him a warranty of seaworthiness. Thus, it must be recognized that Kausler faced a claim on account of Duke's death bottomed on the Jones Act and general maritime law.

The court concludes that Hartford, under the circumstances shown by the record, did not waive its right to invoke the policy provisions under consideration by the court, by refusing to contribute to the settlement perfected by Kausler. Accordingly, plaintiffs' suit based on Hartford's policy must fail.

## PLAINTIFFS' RIGHT TO INDEMNITY FROM HARTFORD

On the indemnity issue the court takes note of the contention of plaintiffs and Hartford that the undisputed facts in the action show conclusively that Duke's death resulted from the negligence of Greenville in negligently furnishing a defective and dangerous means by which Duke gained access to and left the deck of the Johnna B. The parties agree that the negligence of Greenville was the sole and only cause of Duke's death, and that Duke's employer, Vickers Towing, the charterer and operator of the M/V J. E. VICKERS, and the Johnna B, a barge in the tow of the M/V J. E. VICKERS, was not guilty of any negligence which contributed to Duke's

death. The court accepts this contention of the parties in its approach to this issue.

Plaintiffs urge upon the court the doctrine stated in Standard Oil Co. v. Robins Drydock & Repair Company, 32 F.2d 182 (2nd Cir. 1929) that an indemnitee is entitled to indemnification from an indemnitor when the indemnitor is guilty of the primary fault and the indemnitee guilty of the secondary fault of omission. The basis of this rule is not freedom from negligence of the indemnitee, but the primary fault of the indemnitor. This rule has been adopted in this circuit in Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178 (5th Cir. 1969) where the court said:

> "This federal maritime case presents the complex legal question whether indemnity shall be permitted by a tort-feasor, claiming to be only passively or secondarily liable; against a joint tort-feasor guilty of active or affirmative negligence— where no contractual relationship exists between the parties. We hold that the party which is actively negligent should bear the consequences of its wrong and is responsible for the damages incurred. Accordingly, it should indemnify the party which is only vicariously or secondarily wrong, for any damages the latter has been compelled to pay." [12]

The rule is also recognized in Mississippi. See St. Louis-San Francisco Ry. Co. v. United States, 187 F.2d 925 (5th Cir. 1951); Central Surety & Ins. Corp. v. Mississippi Export R. R. Co., 91 F.2d 125 (5th Cir. 1937).

The admitted facts in the action sub judice do not bring it within the scope of this rule. Freedom from negligence on the part of Vickers Towing makes the rule inapplicable. If Vickers Towing was not guilty of secondary or passive negligence which contributed to the death of Duke, the payment of money on its behalf in settlement of the claim amounted to a voluntary payment.

The settled law in Mississippi is that to recover indemnity it is necessary for the plaintiff to allege and prove that he was legally liable to the person injured, and consequently, paid under compulsion. The rule is clearly stated in Southwest Mississippi Electric Power Association v. Harragill, 254 Miss. 460, 182 So.2d 220, 223 (1966) where the court said:

> "The authorities hold that to recover indemnity it is necessary for the plaintiff to allege and prove that he was legally liable to the person injured, and consequently, paid under compulsion. Otherwise, the payment is a voluntary one for which there can be no recovery. (Citations omitted).

This Court has declined to extend aid to those who make voluntary payments for which they were not legally liable. The basic purpose of courts, as far as civil cases are concerned, is to extend aid to those who have not been able by lawful means to aid themselves, and relief is not available to those who have neglected to take care of their interests. If an unjust demand is made upon a party for that which he does not owe, when he knows or ought to know all the facts, he must avail himself of the means the law affords and resist the demand."

Since the death of Duke resulted solely from the negligence of Greenville, and neither Vickers, Vickers Towing, nor Barge Bobbie, Inc., were guilty of any negligence which contributed thereto, Kausler's settlement of the claim was voluntary on its part, and plaintiffs cannot recover on the theory of indemnity.

It is recognized that this decision works a hardship on Kausler. The court, however, cannot extend aid to one who has made a voluntary payment for which it was not legally liable. Kausler was under the duty to avail itself of the means the law affords and resist the de-

12. 410 F.2d at 178, 179.

mand. When Kausler undertook to settle the claim for which Hartford was primarily liable, and against which its policy provided ample coverage, Kausler acted as a volunteer and cannot recover on the theory of indemnity from Hartford.

Accordingly, an order sustaining Hartford's motion for a summary judgment will be entered and plaintiffs' motion for similar relief denied.