WISCONSIN BARGE LINE, INC.

v.

The BARGE CHEM 301, its tackle, apparel, furnishings, fixtures & equipment in rem and the BARGE CHEM 303, its tackle, apparel, furnishings, fixtures and equipment, in rem, et al.

Civ. A. No. 73-121.

United States District Court,
M. D. Louisiana.

March 11, 1975.

James A. George, George & George, Ltd., A Professional Law Corp., Baton Rouge, La., for plaintiff.

Clarence A. Frost, Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for defendants.

E. GORDON WEST, District Judge:

This case, coming within the federal admiralty and maritime jurisdiction of this Court, presents the interesting legal question of whether the plaintiff, having previously entered into a court-sanctioned settlement with its injured employee to compensate him for injuries suffered in an accident brought about solely because of the negligence of one of the defendants, may now recover indemnity from that defendant for the sums it paid and the expenses it incurred in settlement. There is no evidence in this record that the plaintiff was in any way guilty of any negligence whatsoever causing or contributing to the cause of the injuries sustained by its employee, Kelly Vinson. There is also no evidence in this record to even indicate that its vessel, the M/V KATHRYN ECKSTEIN, was in any way unseaworthy. The $30,000.00 paid by the plaintiff to Vinson was paid under no real legal compulsion whatsoever. After due consideration of all of the evidence in this case, this Court concludes that since only a party who has been *compelled* to pay damages because of the fault of a third party tort feasor may seek indemnity for such a payment, the plaintiff, Wisconsin Barge Line, Inc., is not entitled to indemnity for the $30,000.00 payment it gratuitously made to Kelly Vinson. However, since the plaintiff was compelled to incur costs of court, attorney's fees, and payments for maintenance and cure as a result of the accident and as a result of litigation commenced by Vinson in the State Court in Illinois, it will be allowed indemnity for those sums from the defendant, Two Twenty-Eight Terminal Services, Inc., who this Court finds was guilty of negligence which was the sole and proximate cause of Vinson's injuries.

The incident giving rise to this dispute occurred on August 16, 1971. On that date, at about 4:45 a. m., the M/V KATHRYN ECKSTEIN was proceeding up the Mississippi River with approximately 42 barges in tow. Just after the vessel had arrived at mile 227.0 A.H.P., Port of Baton Rouge, a harbor tug proceeded to move three loaded barges out of the inside port string of the tow of the M/V KATHRYN ECKSTEIN and hung them off on the outside of the port string of empties, after which the harbor tug replaced them with three additional loaded barges to make for a better unit tow.

At this point, the mate of the KATHRYN ECKSTEIN instructed two crew members to assist him in tying up these replacements. Crew member Kelly Vinson, a deckhand, proceeded to help the mate make a coupling of the barge wires on the three replacement loads. As Vinson began loosening a ratchet, the flotilla of barges was collided with by two other barges, the CHEM 301 and the CHEM 303, which had somehow come loose from their moorings at Two Twenty-Eight Terminal Services fleeting area and drifted down the river.

As a result of this collision, Vinson was hit on the forehead by a piece of equipment with which he was working, probably either a cable or a "toothpick." Vinson himself could not remember exactly what hit him, and had only a vague recollection of the accident.

As a result of this incident, Vinson instituted suit under the Jones Act against Wisconsin Barge Line, Inc. (Wisconsin), owner and operator of the KATHRYN ECKSTEIN, in the State Courts of Illinois. Wisconsin settled that case for thirty thousand dollars ($30,000.00), and a judgment order approving the settlement was entered by the Illinois Court.

Wisconsin Barge Line now brings this suit against the two drifting barges (in rem) and their owner, the charterer of the barges and the wharfinger (in personam) to indemnify itself for the losses incurred in the Illinois suit, including the settlement figure, attorney's fees and costs of court.

## DEFENDANTS' LIABILITY FOR THE SETTLEMENT FIGURE

■ Maritime law recognizes a tort indemnity arising without any contractual relationship between the parties, where one of the parties is guilty of active or affirmative negligence, while the other is without actual fault but may be vicariously liable because of technical or passive negligence. This tort indemnity doctrine was enunciated by the Fifth Circuit Court of Appeals in Tri-State Oil Tool Industries v. Delta Marine Drilling Co., 410 F.2d 178 (CA 5—1969). The Court in *Tri-State* noted, however, that in order to recover indemnity from one actively or affirmatively negligent, the complainant must have been *compelled* in the first instance to pay the damages which the actual tortfeasor should have paid. As the Court stated, "if others are compelled to pay damages that ought to have been paid by the wrongdoer, they may recover from him." 410 F.2d 178, 181.

■ In reaching its decision, the Court quoted from numerous authorities which delineate the extent of the right to indemnity. Thus, citing 41 Am.Jur. 2d § 20, the Court stated that "it is generally held that a person who, without fault on his own part, *has been compelled to pay damages* is entitled to recover indemnity. . . ." 410 F.2d 181, 182 (Emphasis added). While *Tri-State* speaks in terms of shifting damages "from one tortfeasor to another," it is nevertheless clear that the Court had reference to shifting the damages from one who is only technically a tortfeasor because of some vicarious liability placed upon him by operation of law to one who is the actual, negligent tortfeasor. The justification for the shift must be that the one to be relieved of the burden of paying damages has been found to be only vicariously liable, that is, that he is only technically a tortfeasor, while the person to whom the responsibility for payment is shifted has been found to be the actively negligent person whose negligence gave rise to the vicarious liability of the other person. There is nothing in *Tri-State* to indicate that the Court intended to recognize a right of indemnity in a person who voluntarily pays damage caused by another when the person so paying was not an active tortfeasor and was not, by operation of law or otherwise, under any legal obligation to pay. In 42 C.J.S. Indemnity § 21, at page 596, it is stated that "[o]ne *compelled to pay damages* on account of the negligent or tortious act of another has a right of action against the latter for indemnity." 410 F.2d 182 (Emphasis added). The Restatement of Restitution, § 76 at 331 (1937), also states: "A person who, in whole or in part, *has discharged a duty which is owed by him* but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other. . . ." 410 F.2d 183 (Emphasis added). Thus it seems clear that before a right of indemnity for the payment of a tort damage can be recognized it must be shown that the person seeking the indemnity was a tortfeasor with at least a vicarious

liability, and who was compelled, by operation of law, to pay damages actually caused by the negligence of another.

A review of the record in the Illinois suit reveals that no finding of negligence or unseaworthiness on the part of Wisconsin was ever made, and it further reveals that Wisconsin was certainly under no legal compulsion to settle with Vinson. The Illinois suit charged that Wisconsin was ·negligent in failing to provide Vinson with a safe place to work and in failing to provide a line which was sufficiently strong. The complaint also alleged that Wisconsin's vessel was unseaworthy in that its line broke. But the judgment and order sanctioning the settlement later entered into contains findings of fact which in no way supported the plaintiff's contentions. On the contrary, the Court found specifically that the accident was the result of the collision, and not the result of negligence on the part of Wisconsin or the unseaworthiness of its vessel. As stated in the findings of fact contained in the judgment order,

> "3. The court further finds from statements of plaintiff's counsel and from plaintiff that plaintiff was assisting other crew members of the M/V KATHRYN ECKSTEIN making up tow when the barge on which he was working was struck and collided with by other barges not in the tow of the M/V KATHRYN ECKSTEIN which were floating free and uncontrolled on the lower Mississippi River at or near Mile 227. *As a result of the collision* the court finds that the plaintiff was struck in the head by a piece of rigging which appears to have been a line or wire which broke *as a result of the collision.*" Kelly Vinson v. Wisconsin Barge Line, Civil No. 72–1101 (Circuit Court for the Twentieth Judicial Court, St. Clair County, Illinois) (Emphasis added).

Obviously the judgment order contained no language compelling Wisconsin to pay $30,000.00. It merely approved the settlement entered into "by consent of the parties." Kelly Vinson v. Wisconsin Barge Line, Inc., Id. There was nothing in the facts found by the Illinois Court, and agreed to by Wisconsin Barge Line and Kelly Vinson, to even suggest negligence on the part of Wisconsin or unseaworthiness of its vessel. No vicarious liability on the part of Wisconsin is indicated. Indeed, the attorney for Wisconsin recognized this fact at the time the Illinois suit was filed. In his letter to Two Twenty-Eight Terminal, demanding that they come forward and defend the suit, Wisconsin said " . . . your fault and neglect was the direct and proximate cause of his injuries, if any. His action against our client, the Wisconsin Barge Line, is meritorious, if indeed it has any merit at all, only because of operation of law based upon the fact that Mr. Vinson was an employee of Wisconsin Barge Line." The attorney knew, or should have known, that even though Vinson was an employee of Wisconsin, he could not recover under the Jones Act unless he proved negligence on the part of Wisconsin, and he could not recover from Wisconsin under general maritime law unless he proved unseaworthiness of the vessel. Thus, the fact that Vinson was an employee of Wisconsin did not, of itself, create liability, vicarious or otherwise, on the part of Wisconsin. Wisconsin's attorney recognized that the accident was caused solely ·by the "fault and neglect" of Two Twenty-Eight Terminal, to the exclusion of any fault on the part of Wisconsin, and so did the Illinois Court that approved a voluntary payment by Wisconsin to Vinson.

The voluntariness of a payment in damages such as was made here was recognized by the Court in Greenville Shipbuilding Corporation v. Hartford Accident & Indemnity Co., 334 F.Supp. 1228 (N.D.Miss.—1971), aff'd 460 F.2d 1063 (CA 5—1972) wherein the Court distinguishes between this type situation and the situation in the *Tri-State Oil Tool* case, supra, involving payment by

one of two joint tortfeasors. The Court said:

"The admitted facts in the action sub judice do not bring it within the scope of this rule (the rule of *Tri-State Oil Tool*). Freedom from negligence on the part of Vickers Towing makes the rule inapplicable. If Vickers Towing was not guilty of secondary or passive negligence which contributed to the death of Duke, *the payment of money on its behalf in settlement of the claim amounted to a voluntary payment.*" 334 F.Supp. at 1237 (Emphasis added).

Unless Wisconsin was compelled to pay damages to Vinson because it had some legal liability resulting from the active negligence of another, it has no right of indemnity for money voluntarily paid. See Tankrederiet Gefion A/S v. Hyman-Michaels Co., 406 F.2d 1039 (CA 6— 1969). But the plaintiff says *Tankrederiet* recognized two exceptions to the general rule, both of which are applicable to this case. First, *Tankrederiet* said that indemnity may be had where the indemnification is founded on a judgment, since, in such a case, actual liability has been established. But this statement does not relate to a consent decree involving nothing more than court approval of an agreed settlement. It obviously relates to a judgment based on the merits of the case which recognizes and establishes a liability on the part of the one ordered to pay. Quite contrary to this situation is the judgment rendered by the Illinois Court in Vinson's case against Wisconsin. That judgment did not find Wisconsin negligent, and it did not find Wisconsin liable for damages. It did not order Wisconsin to pay anything. It merely says:

"A judgment is therefore entered by this court on the settlement approved by this court in the sum of Thirty Thousand Dollars ($30,000.00) by consent of the parties, who have on this day, in open court, signed a consent thereto."

Thus, the judgment upon which plaintiff now bases its claim for indemnity did not in any way establish liability. It only approved what the seaman, Vinson, wanted to do, i. e., accept $30,000.00 from Wisconsin in payment for his injuries. Wisconsin, by consent, but not by order or compulsion, paid it. This does not alter the general rule laid down in *Tankrederiet*.

Plaintiff next points to the following language in *Tankrederiet*:

"Distinguishable also are cases where the third party was tendered the defense and refused it." 406 F.2d at p. 1042.

But this language contemplates a case where a defendant calls in an alleged tort feasor as a third party defendant and then seeks indemnity from that defendant. In the present case, Wisconsin did not attempt to make any of the present defendants third party defendants in the original suit. There was no reason for Two Twenty-Eight Terminal to voluntarily inject itself into that suit at the mere request of Wisconsin. It had no reason to undertake the defense of a suit to which it was not a party. Under the circumstances of this case, the general rule as enunciated in *Tankrederiet*, that "an indemnitee must show actual liability to recover against an indemnitor" applies. Wisconsin has shown no "actual liability" and therefore cannot recover indemnity from these defendants.

This Court has also made an independent determination, from an examination of the depositions, exhibits and other evidence submitted in this suit of whether Wisconsin had a legal liability to its employee which resulted in a compulsion to settle with him, thus entitling it to indemnity. A searching examination of the record reveals no facts upon which to base such a conclusion.

The complaint in the present suit alleges that the accident was caused solely by the negligence of, and breaches of warranty by, the defendants. Significantly, it further alleges that the

liability for the *settlement* reached between Vinson and Wisconsin and all expenses and costs incurred by reason of the accident were solely and proximately caused by the fault and negligence of the defendants. Such allegations obviously do not demonstrate that Wisconsin was compelled to pay damages in the first instance.

■ The testimony of the only witnesses to the collision itself, Kelly Vinson and John Skabo, indicate that Mr. Vinson was thrown forward by the collision and injured himself on a piece of equipment or wire broken in the collision. Such testimony, in and of itself, does not establish the negligence of Wisconsin nor the unseaworthiness of its vessel. It is, in fact, compatible with the theory that the great force of the collision put an undue strain on the wire or rigging, breaking it and causing it to hit Vinson in the head.

Wisconsin notified defendant Two Twenty-Eight Terminal Services, Inc. by telegram dated August 16, 1971, that it was holding Two Twenty-Eight liable for any and all damages resulting from the accident. Wisconsin also demanded by letter dated July 14, 1972 that Two Twenty-Eight appear and defend that Illinois suit. In this letter, Wisconsin's attorney asserted that "[y]our fault and neglect was the direct and proximate cause of his injuries, if any. His action against our client, the Wisconsin Barge Lines, is meritorious if indeed it has any merit at all, only because of operation of law based upon the fact that Mr. Vinson was an employee of Wisconsin Barge Lines." No evidence of compulsion of any kind can be found in these assertions.

Two Twenty-Eight had no obligation to appear and defend the Illinois suit unless and until it was made a proper party defendant. Wisconsin had full opportunity to make Two Twenty-Eight a third party defendant, but failed to do so. It could also have tried the suit to judgment, and brought suit for any sums it was compelled to pay as a result of a judgment rendered against it. Instead, it chose to make a voluntary payment, a gratuity, to Vinson in the hope of recovering indemnity for that sum later.

■ To allow indemnity for the gratuitous payment of this settlement figure would not only be inconsistent with the theory of maritime tort indemnity, but would also subject the defendants to the whims of Wisconsin Barge Line in determining what a reasonable settlement figure should be. While Two Twenty-Eight Terminal was advised of the filing of the Illinois suit, and was asked to defend it, it was never made a party to that suit by either Wisconsin or Vinson, both of whom had the right to do so, and it was never given the opportunity to approve or reject the settlement entered into between Wisconsin and Vinson. The payment of the settlement by Wisconsin Barge Line was a purely voluntary gesture, made according to its sole determination of what was reasonable. It was under no legal compulsion whatsoever to make the payment and it may not now recover indemnity from the present defendants for that settlement figure, notwithstanding the fact that one or more of them may have been actually and legally responsible for the accident.

## DEFENDANTS' LIABILITY FOR COSTS OF COURT, ATTORNEY'S FEES AND MAINTENANCE AND CURE PAYMENTS

■ As Wisconsin Barge Line was compelled to pay maintenance and cure payments, attorney's fees and court costs as a result of the injury to its employee and the subsequent Illinois litigation, it is entitled to indemnity from the actual tortfeasor for those sums.

This Court agrees with what appears to be the weight of authority in holding that an innocent shipowner has a right over against a tortfeasor for maintenance and cure payments made as a result of injury to a seaman caused by the tortfeasor's negligence. Richardson v.

St. Charles-St. John Baptist Bridge & Ferry Authority, 284 F.Supp. 709 (E.D. La.—1968); Jones v. Waterman S. S. Corp., 155 F.2d 992 (C.A. 3—1946); Mahramas v. American Export Isbrandtsen Lines, Inc., 475 F.2d 165, 170 (C.A. 2—1973); United States v. The Manzanillo, 190 F.Supp. 229, 232–233 (D.Or.—1960), rev'd on other grounds, 310 F.2d 220 (C.A. 9—1962); Gilmore and Black, The Law of Admiralty, pp. 273–277 (1957). Attorney's fees and costs of court incurred in prior litigation have also been held to be elements of recoverable damage in a suit for indemnity. Brock v. Coral Drilling, Inc., 477 F.2d 211 (C.A. 5—1973); Kelloch v. S & H Subwater Salvage, Inc., 473 F.2d 767 (C.A. 5—1973); Singer v. Dorr, 272 F.Supp. 931 (E.D.La.—1967); Dow Chemical Co. v. Barge UM–23B, 287 F.Supp. 661 (E.D.La.—1968), aff'd 424 F.2d 307 (C.A. 5—1970).

The question thus remains as to who was the actual wrong-doer in this incident, i. e., who was actually and affirmatively negligent.

After due consideration of the evidence submitted at the trial of this action, it appears, as was stipulated to by the parties, that Two Twenty-Eight Terminal Services, Inc. had sole and exclusive control of the mooring and securing of the barges CHEM 301 and CHEM 303 on the date of the incident. Testimony of Donald Magee, then captain of one of Two Twenty-Eight's tugboats, the MARMAC, established that he picked up either the barge CHEM 301 or the barge CHEM 303 at the Solvay Chemical Plant at some time around midnight on August 15, 1971. The MARMAC towed the barge to the Two Twenty-Eight fleeting area and tied it up alongside the other barge in question, which was already tied up in the fleet, at about 2:00 a. m. the morning of the 16th. A ship had passed the fleeting area at some time around midnight, but Mr. Magee discounted this as a possible cause of the breakaway because of the lapse of time between the ship's passing and the breakaway.

Testimony of the witnesses established that the barges broke away at some time around 3:00 a. m. on the morning of the 16th. There was no evidence of any kind to establish that unusual water conditions or other environmental factors contributed in any way to the breakaway. In fact, Mr. Magee stated that the Two Twenty-Eight fleeting area is located in an area of relatively quiet water, and is "the best fleet area in Baton Rouge."

Robert Cannella, then deckhand on the MARMAC, testified that the barges were tied together with "scrap lines" of a type inferior to those found in other fleeting areas at the time. The reason for this, as testified to by Cannella and uncontroverted by the defendants, was that Two Twenty-Eight simply failed to supply good quality and adequate lines and other needed supplies to its employees.

Although Cannella could not recall whether the CHEM 301 and CHEM 303 were tied directly to shore, he testified that the only thing which would have moored any connected barges to the shoreline was a shore wire, referred to as a "dead man." Cannella further testified that this shore wire was probably a manila line, as "[w]e didn't know what cables was in that fleet."

This Court adheres to the long-standing principle of American Maritime Law that a vessel which drifts into collision is presumed to be at fault until the contrary is made to appear The Louisiana, 3 Wall. 164 (70 U.S.), 18 L.Ed. 85 (1865); Weeks Steve. Co., Inc. v. Alexandra Nav. Corp., Ltd., Panama, 353 F.Supp. 1069 (S.D.N.Y.—1973); Monsanto Company v. Edwards Towing Corporation, 318 F.Supp. 13 (E.D.Mo.—1969); Monsanto Company v. Port of St. Louis Investments, Inc., 350 F.Supp. 502 (E.D.Mo.—1972); The Buffalo, 56 F.2d 738 (C.A. 2—1932); The Trenton, 72 F.2d 283 (C.A. 2—1934). A breakaway such as the one in question establishes a prima facie case of negligence against the moving vessel. Monsanto

Company v. Edwards Towing Corporation, supra.

The circumstances of this case, however, rebut a presumption of fault on the part of either the barges; their owner, American Commercial Barge Lines, Inc.; or their charterer, Allied Chemical Company. Instead, the facts show that Two Twenty-Eight Terminal Services, Inc., the wharfinger, had exclusive possession and control of the barges on the night in question. Although a wharfinger does not guarantee the safety of vessels coming to his wharves, he is bound to exercise reasonable diligence in ascertaining the condition of their berths, and in properly and securely mooring them. Smith v. Burnett, 173 U.S. 430, 433–434, 19 S.Ct. 442, 43 L.Ed. 756 (1897); Dow Chemical Co. v. Barge UM–23B, supra. Two Twenty-Eight Terminal Services, Inc. has failed to convince this Court that the breakaway was caused by another ship's passing, unusual water conditions or inevitable accident. Nor was there any evidence of Vinson's negligence which could have contributed to his injuries. The record, instead, contains affirmative evidence that inadequate lines were used to moor the vessels; such proof is sufficient to establish Two Twenty-Eight's negligence by a preponderance of the evidence. It breached its duty to properly and securely moor the barges, and therefore it is liable for the damages caused by those barges when they broke away from their moorings.

As no negligence has been found on the part of either the BARGE CHEM 301, the BARGE CHEM 303, American Commercial Barge Lines, Inc. or Allied Chemical Company, all claims against them must be dismissed.

Judgment, therefore, shall be entered in favor of plaintiff, Wisconsin Barge Line, Inc., and against defendant, Two Twenty-Eight Terminal Services, Inc., in the amount of Two Thousand Four Hundred Eighteen Dollars and Seventy-Nine Cents ($2,418.79), which repre-sents the total amount of maintenance and cure payments, attorney's fees and costs Wisconsin Barge Line was compelled to pay as a result of the Illinois litigation.

No claim is made for attorney's fees incurred by Wisconsin in this litigation, but all costs of court in this suit shall also be borne by the defendant, Two Twenty-Eight Terminal. Judgment will be entered accordingly.